## Kronenburg v. Van De Plas

C.P. of Northumberland County, no. CV-01-1401.

*John W. Purcell Jr.,* for plaintiff.
*Wayne W. Ringeisen,* for defendants.
*Jonathan B. Fellows,* for defendant Van Logten.

SAYLOR, *J.,* April 2, 2002—The question presented before this court is the application of section 5322(a)(1) of the Pennsylvania long-arm statute, 42 Pa.C.S. §5322, which provides for personal jurisdiction in certain circumstances over a nonresident defendant, to this dispute over contract obligations with Dutch nationals, residents of the Netherlands, and whether extending personal jurisdiction in this matter complies with the due process clause of the Fourteenth Amendment of the United States Constitution. This court holds, for the reasons set forth below, that section 5322(a)(1) of Pennsylvania's long-arm statute does confer personal jurisdiction over the defendants in this matter, and that this exercise of jurisdiction comports with the constitutional requirements of the Fourteenth Amendment.

Plaintiff filed his complaint on October 2, 2001. Defendant Mario Van Logten filed preliminary objections to the complaint on December 13, 2001. Defendants Dirk Biemans and Intergrow Inc. filed preliminary objections to the complaint on January 11, 2002. Plaintiff's responses to the preliminary objections were filed on January 30, 2002. Plaintiff and defendants submitted briefs on the preliminary objections and argument on the matter was held on March 4, 2002.

At the time of argument, counsel for both parties indicated that the facts material to the disposition of the preliminary objections were undisputed, and for this pur-

pose depositions or a hearing were not required here. At least at this stage of the proceedings, the court must assume that there was a contractual relationship between them by accepting such allegations by plaintiff in his complaint.

In 1998, the defendants, from the Netherlands, contacted the plaintiff at his home in Mount Carmel, Northumberland County, Pennsylvania, for the purpose of soliciting his expertise in locating a site (presumably in the U.S.) for a greenhouse. The contact of the plaintiff by the defendants was facilitated by a previous relationship between the parties where they worked together in a similar capacity.[1]

An agreement was faxed to the plaintiff at his home on March 18, 1998. The agreement outlined what his role would be as a consultant in this venture. The agreement outlined his services to be as follows: (1) to find a suitable construction site with the required permits for the greenhouse; (2) find suitable American bank financing for the project; (3) research, arrange, and finalize any potential subsidies and government guarantees; and (4) advise the defendants of legal issues during the start-up phase of the project. The compensation for these services was to be $100,000. In addition, the agreement established a nine percent commission on the gross sale of the tomatoes to be produced at the facility.

Initially, the defendants requested that a site for the greenhouse was to be located in the southern portion of the United States. After researching this request and con-

---

1. The reference to the defendants is as to the individual defendants and not the corporate defendant, Intergrow Inc.

tacting the appropriate real estate agents, a site was located in North Carolina. Plaintiff and the defendants met in Pennsylvania and from there they proceeded together to inspect the potential site. The defendants ultimately purchased the site, although it was never developed by them.

Sometime after the purchase of the North Carolina site, the defendants contacted the plaintiff again, this time regarding an existing greenhouse located in Portageville, New York. Defendants then met with the plaintiff in Pennsylvania to discuss the possibility of purchasing the New York site. Defendants purchased the New York site and once again asked if the plaintiff would market and sell the tomatoes that would be produced at the New York site.

Plaintiff agreed that he would market and sell all the tomatoes to be produced at the New York site but requested that the contract for this service be a long-term commitment. The long-term agreement was to prevent the defendants from gaining access to the plaintiff's client base and then removing him from the process. Contract negotiations stopped after this request was made. Several weeks later the defendants contacted the plaintiff at his home in Pennsylvania and agreed to the plaintiff's stipulation that he was to market and sell all the tomatoes to be produced at the New York site. Defendants further agreed that this agreement would be for the life of the facility.

The New York greenhouse operation was at some point incorporated under the name of Intergrow Inc. The defendants are alleged to be the sole shareholders thereof.

In compliance with the agreement, the plaintiff contracted with a company to market and sell the tomatoes on his behalf, that is, Gourmet Gardens, a Pennsylvania corporation. Defendants initially shipped 90 to 100 percent of their tomatoes to a distribution center in Pennsylvania. The customer base included clients located in Pennsylvania. This relationship continued until the beginning of 2000. At this time the plaintiff became aware that the defendants were not shipping their entire production of tomatoes from the New York greenhouse through him for resale as they previously agreed.

Plaintiff filed a suit against the defendants in U.S. District Court for the Middle District of Pennsylvania on May 9, 2001, alleging breach of contract. Defendants contested the court's jurisdiction based on the lack of diversity of citizenship. Plaintiff then consented to the dismissal of the case in federal court. Defendants then brought an action in the Supreme Court of the State of New York, Allegany County, seeking a declaration that the correspondence at issue between the parties did not constitute enforceable contracts. Defendants' action is still pending in the New York court. Plaintiff subsequently filed this action for breach of contract.

Pursuant to the Judiciary Act, 42 Pa.C.S. §§5301-5329, our courts may exercise two types of in personam jurisdiction over a nonresident defendant. The first type of personal jurisdiction is general jurisdiction. To determine if a court has general jurisdiction over a nonresident defendant the court looks to see if the defendant's contacts with the forum state are founded on general activities that are continuous and systematic. *Allied Leather Corp. v. Altama Delta Corp.*, 785 F. Supp. 494 (M.D. Pa. 1992)

(quoting *Horowitz Financial Corp. v. Vacation Time Hilton Head Inc.,* no. 90-4449, WL 1912149 at *2, 1991 U.S. Dist. Lexis 13375 at *5 (D.N.J. Sept. 23, 1991)). The threshold that must be met for a forum state to have general jurisdiction "is much higher than that for specific jurisdiction, as the facts required to assert general jurisdiction must be 'extensive and pervasive.' " *Id.* at 498 (citing *Reliance Steel Products Co. v. Watson, Ess., Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir. 1982)). General jurisdiction exists when the nonresident defendant's contacts with the forum state are voluntary actions that deem him present in that state. Voluntary actions must indicate that the nonresident defendant "purposely availed itself of the privilege of conducting activities within [Pennsylvania], thus invoking the benefits of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

It is clear from the facts before this court that the defendants' contacts with Pennsylvania were not extensive or pervasive enough to support general jurisdiction. To determine whether the nonresident defendants' contacts meet general jurisdiction, the court must look at the "nature and quality of the business contacts." *Altama,* 785 F. Supp. at 498. Contacts that have been held to meet this standard are "direct sales in the forum, maintenance of a sales force in the state, advertising targeted at the residents of the forum state, and the derivation of a significant slice of revenue from activity within the state." *Id.* The facts before this court do not indicate that the defendants targeted sales in this state, advertised in this state, or derived a majority of their revenue from their clients in Pennsylvania; therefore, this court cannot exercise general jurisdiction over the defendants.

The second type of jurisdiction that this court may exercise is specific or transactional jurisdiction. This form of jurisdiction is focused upon the nonresident defendant's particular acts within the forum state that gave rise to the underlying cause of action. *Waimberg v. Medical Transp. of America Inc.,* 52 F. Supp.2d 511 (E.D. Pa. 1999). See *Hall-Woolford Tank Co. v. R.F. Kilns,* 698 A.2d 80 (Pa. Super. 1997). In the case at bar, specific jurisdiction is the only form of jurisdiction that may be asserted. However, regardless of which form of jurisdiction is being asserted, the jurisdiction must be tested against the two-prong test established by the Pennsylvania Supreme Court. See *Hall-Woolford Tank Co. v. R.F. Kilns,* 698 A.2d 80 (Pa. Super. 1997). Thus, jurisdiction over a nonresident defendant must be tested against both Pennsylvania's long-arm statute and the due process clause of the Fourteenth Amendment to the United States Constitution. *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110 (1992).

A court of this Commonwealth may exercise personal jurisdiction over a nonresident defendant through its long-arm statute in 42 Pa.C.S. §5322. The applicable portion of that statute is set forth below:

"(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

"(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the fol-

lowing shall constitute transacting business for the purpose of this paragraph:

"(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

"(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

"(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth." 42 Pa.C.S. §5322(a)(1).

In the instant case, the defendants solicited and used the services of the plaintiff, which resulted in business transactions within the Commonwealth. In accordance with the state's long-arm statute, a nonresident may be subject to personal jurisdiction for transacting business in either a series of similar acts or a single act in this Commonwealth for the purpose of gaining a monetary benefit. 42 Pa.C.S. §5322(a)(1)(i) and (ii). The facts indicate that the defendants contacted the plaintiff on several occasions for purpose of utilizing his expertise in locating and establishing a greenhouse. This series of events led to the establishment of a tomato greenhouse in New York. The produce from this greenhouse was then distributed from an operation located in Pennsylvania, and a portion of its customer base was from Pennsylvania. Defendants did not address the applicability of the Commonwealth's long-arm statute and instead, reserved their argument for the constitutional issues relevant to the second prong of the test. It is clear from the facts that

the defendants were involved in a series of business transactions within this Commonwealth for their pecuniary benefit. Therefore, the requirements of the Commonwealth's long-arm statute have been satisfied under sections 5322(a)(1)(i) and (ii).

Furthermore, the long-arm statute confers jurisdiction if the nonresident defendant ships merchandise directly or indirectly into or through the Commonwealth. 42 Pa.C.S. §5322(a)(1)(iii). The defendants shipped their produce exclusively through a distribution center located in Pennsylvania. Defendants were paying for the transportation costs to have the tomatoes shipped to the distribution center and then to the customers. Defendants argued that the plaintiff has not established a connection between his cause of action, the defendants, and the Pennsylvania distributor and, therefore, should not be allowed to assert personal jurisdiction over the defendants as individuals. The distributor was under contract with the plaintiff as a result of the ongoing business transactions between the plaintiff and the defendants. The distribution of the tomatoes is a result of the agreements, which are at the heart of this case. Therefore, it is clear that the defendants have shipped goods directly into and through Pennsylvania because of their business ties with the plaintiff.

Pennsylvania's long-arm statute may be interpreted broadly and therefore, encompasses most contacts with this state. The broad interpretation of our long-arm statute is tempered by the constitutional requirements of the second prong of the test for personal jurisdiction established by our Supreme Court. The constitutional requirement is codified in section 5322(b) of Pennsylvania's

long-arm statute, 42 Pa.C.S. §5322(b). This section provides that Pennsylvania's long-arm statute permits jurisdiction to be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States.

This second prong, as set forth in *Kubik,* requires that in personam jurisdiction over the nonresident defendant must be tested against the due process clause of the Fourteenth Amendment to the United States Constitution. *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110 (1992) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The due process clause requires that the minimum contacts with the forum must be such that the assertion of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). The United States Supreme Court has established a two-part test in *Burger King* that jurisdiction must be tested against to determine if it meets the requirements of the Fourteenth Amendment. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The first part of the test requires that the nonresident defendant must have sufficient minimum contacts with the forum state and secondly, the assertion of personal jurisdiction must comport with fair play and substantial justice. *Id.* The facts of each case must be weighed in determining whether jurisdiction is proper.

The court must determine that sufficient minimum contacts exist to confer personal jurisdiction over a nonresident defendant. The contacts must be based on a find-

ing that the defendant's conduct and his relationship with the forum state establish a sufficient basis by which he should "reasonably anticipate being haled into court there." *Kubik v. Letteri,* 532 Pa. 10, 17, 614 A.2d 1110, 1114 (1992) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985)). Critical to the minimum contacts analysis is whether the defendants directed their activities towards Pennsylvania, thus invoking the "benefits and protections" of this state's laws. *Id.*

The law in this state is well-settled that an individual contract with a nonresident cannot automatically establish minimum contacts sufficient to confer personal jurisdiction over the nonresident defendants. *Kubik, supra.* The court must look at the totality of the circumstances surrounding the contract. The court must consider prior contractual negotiations, the terms of the contract, their contemplated future consequences, and their actual course of dealing in making a decision whether the contract is a sufficient contact with the forum state to confer jurisdiction upon the nonresident defendants. *Hall-Woolford,* 698 A.2d at 83. The defendant's contacts with Pennsylvania cannot be "random, fortuitous or attenuated." *Kubik, supra.*

The facts in this case clearly establish that the defendants made numerous contacts with the Commonwealth. The contacts in this matter, as previously stated, establish that they were sufficient enough to establish a business relationship that was to continue into the future. Defendants argue that the contacts are attenuated and do not form a sufficient basis to exercise personal jurisdiction over this matter. The cause of action must arise from

the defendants' contacts with Pennsylvania. The question before the court is whether the defendants have sufficient minimum contacts with this state to make the imposition of jurisdiction reasonable. In the case at bar, it is clear from the facts presented that sufficient minimum contacts between the defendants and the Commonwealth exist to assert personal jurisdiction. The contacts include meetings, negotiations for services, and consulting services. The contacts were not random and fortuitous, but rather, provide an adequate basis here for jurisdiction.

In addition, the defendants assert that a business relationship between Intergrow, a New York corporation, and Canam, also known as Gourmet Gardens, cannot support an assertion of personal jurisdiction over the defendants as individuals. The defendants cite *Waimberg, supra,* for the premise that individuals that are "performing acts in the state in their corporate capacity are not subject to the courts of that state for those acts." *Id.* Defendants' reliance on this language is misplaced as the Intergrow Corporation is an alter ego of the individual defendants involved in this matter. Intergrow's relationship in this matter is the result of the contacts between the parties. The agreements involved in this case were signed by the individual defendants that now constitute the shareholders of Intergrow. Furthermore, the agreements provided for the continued services of the plaintiff. Plaintiff contracted with Canam to facilitate these agreements between the parties. Therefore, this court may confer personal jurisdiction upon Intergrow as the alter ego of the individual defendants.

The court must now determine if the assertion of personal jurisdiction will comport with fair play and sub-

stantial justice. The standard the court must follow is whether the defendants' activities within the forum state are "such as to make it reasonable and fair to require him to conduct his defense in the state." *Burger King, supra.* In making its determination whether assertion of personal jurisdiction is fair and reasonable the court must consider the following factors: "(1) the burden on the defendants, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most effective resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 485-86.

Defendants have the burden of persuasion to show that the "assertion of jurisdiction is unconstitutional." *Daimler Chrysler Corp. v. Askinazi,* 2000 U.S. Dist. Lexis 8740 (E.D. Pa. June 26, 2000).

The Commonwealth's interest is to provide a convenient and effective means of redress for its citizens. The facts, as previously stated, clearly establish that the plaintiff has his principal residence and business in Pennsylvania. The contacts made between the plaintiff and the defendants were in the Commonwealth. Additionally, the distribution contract was established with a Pennsylvania corporation. Defendants contend that Pennsylvania has no interest in adjudicating a dispute between foreign nationals and projects in North Carolina and New York. The defendants are correct that the contacts do involve foreign nationals and projects outside this state's boundaries; however, the contacts are a result of negotiations, agreements, and meetings with a citizen of this state.

Under these facts, it is fair and reasonable for the defendants to be haled into court in this Commonwealth.

Another factor that must be considered is the burden on the defendant to defend a dispute in the forum state. *Burger King, supra.* The facts indicate that the defendants met with the plaintiff on several occasions in this state. The Commonwealth was convenient enough for the defendants to travel to and meet with the plaintiff. Nevertheless, the defendants contend that there is an action pending in the New York Supreme Court and that there is no reason why this dispute cannot be resolved in that court. Defendants ignore the imperative that this Commonwealth is to provide an effective means for relief for its citizens. *Kubik,* 532 Pa. at 21, 614 A.2d at 1116. New York is a state adjacent to this Commonwealth. In conferring jurisdiction upon the defendants this court would not be asking for anything more from the defendants than they were willing to do when they made the contacts with this state and traveled to this state in furtherance of those contacts. Therefore, defending a suit in this state would not be a burden upon the defendants.

From the facts in this case, it cannot be said that providing jurisdiction in this state would impede a shared interest of the several states in furthering substantive social policies. Nor are there any facts that indicate that this matter would not promote the interstate judicial system's interest in obtaining the most effective resolution of controversies. The contacts between the parties were made in this state, therefore, Pennsylvania is the only state with an interest in the effective resolution of the dispute.

For the foregoing reasons, this court holds that as a result of the defendants' contacts here, Pennsylvania's long-arm statute does confer jurisdiction over this matter and that this jurisdiction does not offend the constitutional requirements of the Fourteenth Amendment of the U.S. Constitution. Defendants must defend this action in Pennsylvania, and thus, the preliminary objections as to jurisdiction are denied.

## ORDER

And now, April 2, 2002, the preliminary objections of the defendants, Dirk Biemans, Mario Van Logten and Intergrow Inc., are hereby denied.